UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 13-878 (RDM) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' RULE 26(a)(2)(B) REPORT OF EXPERT KAREN ALBERT

Pursuant to Fed. R. Civ. P. 26(a)(2)(B), Defendants submit their expert disclosures for Karen Allen. Ms. Albert has previously been qualified as an expert witness for corrections housing assignments, training, and classification. Her relevant training, experience, educational background, and history of court qualifications and depositions are set forth in more detail in the Curriculum Vitae attached hereto as Albert Exhibit A.

Respectfully Submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

JONATHAN H. PITTMAN
Chief, Civil Litigation Division, Section IIII

1

/s/ *Martha J. Mullen*
MARTHA J. MULLEN [419036]
Senior Assistant Attorney General
441 441 Fourth Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6612
Fax: 730-0635
martha.mullen@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 13-878 (RDM) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

### DEFENDANTS' RULE 26(a)(2)(B) REPORT
### OF EXPERT KAREN ALBERT

OPINION

The Office of the Attorney General retained me to review the records in this case and, if appropriate, render a rebuttal opinion about whether the District of Columbia Department of Corrections ("DOC") violated a national standard of care as set forth in the preliminary report of Jeff Eiser ("Eiser Rept."). Mr. Eiser relies upon the American Correctional Association Performance-Based Standards for Adult Local Detention Facilities, ("ACA") Standards IA and 2A, as the basis for his opinion that the DOC and the individual defendants (collectively "Defendants" unless otherwise specified) violated a national standard care. Mr. Eiser recognizes that these standards are not "mandatory," (Eiser Rept. 1-2) and, indeed, the ACA Standards do not have any regulatory authority over detention centers.

Based on my preliminary review of the records and Mr. Eiser's report, I am of the opinion that Mr. Eiser has not stated a national standard of care upon which the Defendants' conduct can be measured. Specifically, the two ACA Standards upon which Mr. Eiser relies, reflect general principles in penology: (1) "[s]taff, volunteers, contractors, and inmates are protected from injury and illness in the workplace . . . [t]he community, staff, volunteers, contractors, and inmates are protected from harm. The number and severity of events are minimized." ACA Standards 1A and 2A, Eiser Rep. 15-16. However, these principles of prison/jail management do not measure conduct; rather, they state the goals that detention facilities strive to achieve by implementing policies, procedures and protocols that are consistent with protecting staff, civilians and inmates from harm.

In this case, DOC policies and procedures (PS 3350.2F and PS 4020.3C) and practices are aimed at preventing discrimination and responding to inmates who are transgender, transsexual, inter-sex and gender variant persons. As evidenced in Jane Doe's Institutional file, numerous staff were responsive to her status and took appropriate action consistent with policy and procedure. Based on my experience, education and training, the policies and procedures as well as the regular housing reviews and staff responsiveness (including security staff, case management staff and hearing review staff) support the DOC's responsiveness to this inmate population, which includes Jane Doe. Moreover, the auditors who completed an ACA inspection of

4

the facility in October 2012 interviewed approximately 94 inmates throughout the facility, and the inmates indicated that they "felt safe" and "staff listens to them and responded to their needs." (Standards Compliance Reaccreditation Audit 16).

Mr. Eiser's report assumes that because detention facilities should protect inmates under ACA Standards 1A and 2A, then prison personnel by definition have violated a national standard of care if harm befalls someone inside the facility. One might as well conclude that a physician must have violated a standard of care, if the patient suffers complications or dies.

Mr. Eiser's conclusions are legal conclusions. For instance, the report concludes (1) that because Defendants did not take steps to protect Jane Doe from harm, they demonstrated "a callous and reckless disregard" to her safety and (2) violated "clearly established corrections industry practices and standards." Eiser Rept. ¶ 13 (a) at 16. The first conclusion is not subject to expert opinion and second does not tell me what "clearly established" industry standards he is referencing, other than the "do no harm" principles set forth in ACA Standards 1A and 2A.

Similarly, Mr. Eiser concludes that Defendant's "by creating and then ignoring a substantial and serious risk to the safety of [Jane Doe]" Defendants violated "clearly established" industry standards, again without referencing any standard other than the principles set forth in ACA Standards 1A and 2A. Eiser Rept. ¶ 13 (b), (c) at 16.

5

Finally, Mr. Eiser makes the sweeping conclusion (if Jane Doe is to be believed) that Defendants' conduct "in this case indicates a pattern and practice of callous and reckless disregard to the safety of [Jane Doe] . . . and that their actions "created a substantial and serious risk to [Jane Doe] . . . [that] were the proximate cause of the sexual assault." Eiser Rept. ¶ 14 at 17. These conclusions are expressed in legal terminology that again do not inform me of what national standard Mr. Eiser believes was violated.

### BASIS FOR OPINION

I have relied upon my extensive personal experience and training in the field of corrections, which I have developed as a corrections officer, trainer, administrator, expert witness and consultant in corrections-related matters. None of my opinions relies upon the opinions and conclusions of non-experts or persons who were not involved in the alleged incident that gave rise to this lawsuit. I state my opinions based upon a reasonable degree of certainty in my area of expertise.

### EXHIBITS – MATERIALS REVIEWED

1. First Amended Complaint
2. Plaintiff's Amended Rule 26(a)(2) Designations
3. Eiser Rule 26(a)(2) Disclosure
4. Abbott 26(a)(2) Disclosure
5. Skoler 26(a)(2) Disclosure

6. Jane Doe Institutional File

7. Program Statement (PS) 3350.2F dated January 27, 2012, Elimination of Sexual Abuse, Assault and Misconduct.

    a. Attachment A – Notice to Inmates

    b. Attachment B Employee Discipline

    c. Attachment C – Acknowledgement of receiving PS 3350.2F

8. PS 4020.3C dated December 28, 2011, Gender Classification and Housing.

9. CDF Shift Report for July 17-18, 2012

10. CDF Shift Report for July 18-19, 2012

11. Exhibit D - Sexual Assault Case Jacket SOP Checklist and MPD Investigative Report

12. Exhibit E - MPD Incident-Based Report

13. Exhibit F – SANE Program Report

14. Exhibit G – MPD Supplement Report

15. Surveillance Tape – I was unable to view this tape because of technical difficulties in transmitting it electronically.

## QUALIFICATIONS & LIST OF CASES

I have previously been qualified as an expert witness as to corrections housing assignments, training, and classification. My relevant training, experience, educational

background, and history of court qualifications and depositions are set forth in more detail in the Curriculum Vitae attached hereto as Attachment A.

## COMPENSATION

I charge clients $175 per hour for consultation and review, appearing in court, deposition, and/or submitting an expert report/affidavit, which includes travel time from my residence to an off-site location. Travel expenses are paid at a pre-arranged rate.

I will supplement my opinions as expressed in this report when or if further facts, materials, reports, and/or any other evidence are submitted for my review.

Signature: *[signed]* Karen Albert

Date: 11/20/2015